**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0002n.06
Filed: January 3, 2007

**06-3010**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HUGH GAUGHAN and THOMAS RADDELL, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and COLE, Circuit Judges, RESTANI,[*] Judge.

**RESTANI, Judge.** This appeal arises from Plaintiffs-Appellants Hugh Gaughan and Thomas Raddell's (collectively "Appellants") constitutional challenge to two Cleveland, Ohio, ordinances, Cleveland Codified Ordinances ("C.C.O.") §§ 683.01(a), (b) and 605.10(b)(9), that regulate the playing of sound devices (collectively, the "Cleveland Ordinances"). Appellants argued that the Cleveland Ordinances violated their speech and due process rights under the First and Fourteenth Amendments of the U.S. Constitution. The district court dismissed their complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We affirm.

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

06-3010
Gaughan v. City of Cleveland

## ORDINANCES AT ISSUE

As previously stated, the current appeal involves two Cleveland city ordinances, C.C.O.

§§ 683.01 and 605.10.  Section 683.01 provides:

Section 683.01.  Playing of Sound Devices Prohibited; When
(a) No person shall play any radio, music player, television, audio system or musical instrument in such a manner or at such volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants or at a volume which is plainly audible to persons other than those who are in the room in which such device or instrument is played and who are voluntary listeners thereto.
(b) Except for organized events which have received any type of permit from the City in conjunction with the event, no person shall play any radio, music player, television or audio system upon a public right of way or upon other public property in such a manner or at such a volume as to disturb the quiet, comfort or repose of other persons.

C.C.O. § 683.01.

The second challenged ordinance, section 605.10, provides in relevant part:

Section 605.10.  Unnecessary Noise
(a) No person shall make, or cause, suffer, allow, or permit to be made within the City any unreasonably loud, disturbing and unnecessary noise, or noises of such character, intensity or duration as to be detrimental to the life and health of any individual.
(b) Loud, disturbing and unnecessary noises in violation of this section shall include without limitation the following:
    . . .
    (9) The making of any loud, unseemly or unnecessary noise in
    violation of Chapter 683 of these Codified Ordinances.

C.C.O. § 605.10.

## PROCEDURAL HISTORY & FACTUAL BACKGROUND

Appellants are anti-abortion activists who protest at abortion clinics in Cleveland, Ohio.  In

January 2003, Appellants obtained an audio recording of a 911 call made from the Center for

06-3010
Gaughan v. City of Cleveland

Women's Health, an abortion clinic in Cleveland, Ohio. The call concerned a request from Martin Ruddock, owner and operator of the clinic, for emergency medical assistance for a woman for whom he had just performed an abortion. During the call, Ruddock stated:

> She's stable, she's fine. She's an obese young lady, 30 years old. I did a second trimester abortion. She has a laceration on the cervix, at 3:00 on the cervix. I . . . stitched [it] and she has vaginal packing. She's stable. I just can't stop the bleeding. I can't see what I'm doing and I want her out of here.

(Am. Compl. ¶ 14.)

After receiving the audio recording, Appellants played it during many of the protests at the clinic in order to "educate the women as to the life-threatening dangers inherently associated with abortion." (Id. ¶ 15.)

On December 27, 2003, Gaughan played the recording on an audio cassette player while standing near the rear of the abortion clinic. On January 23, 2004, Susan Noble, an employee of the clinic, filed a complaint against Gaughan, alleging that Gaughan violated C.C.O. § 683.01(a) and Ohio Revised Code § 2911.21(A)(1) and (2), which prohibits criminal trespass, on December 27, 2003. As a result of Noble's complaint, a warrant was issued for Gaughan's arrest. On January 24, 2004, Gaughan again played the 911 recording while standing near the rear of the clinic. While Gaughan played the recording, he was arrested by the Cleveland police pursuant to the warrant. Gaughan paid a $75 fine and pled no contest to the trespass charge. The charge for violating § 683.01(a) was later dismissed. After the arrest, Gaughan continued to play the recording during protests at the clinic. Uniformed police were present during the protests and were aware that Gaughan was playing the recording, but did not arrest or cite Gaughan.

On November 13, 2004, Gaughan played the recording while standing on a public sidewalk across the street from the rear of the clinic. Police informed him that "neighboring inhabitants" had complained about the noise and threatened to charge him for violating § 683.01(a). Gaughan then moved to a public sidewalk near the front of the clinic and again played the recording. The police told him that the recording could be heard inside the clinic and gave him a citation for violating C.C.O. § 683.01(a).[1] The citation stated that he was playing the recording "in such a manner or at such a volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants." Trial was set for Gaughan's violation but the charge was later dismissed. Gaughan has not played the recording at the clinic since November 13, 2004.

On February 2, 2005, Appellants brought suit in district court against the City of Cleveland, alleging that the Cleveland Ordinances violated their speech and due process rights under the First and Fourteenth Amendments. Appellants argued that § 683.01(a) was unconstitutionally vague and overbroad on its face and as applied. Appellants also alleged that § 683.01(b) and § 605.10(b)(9) were facially impermissibly vague. The district court rejected Appellants' arguments and dismissed their complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Appellants appeal the dismissal of each of their claims.[2]

---

[1]Although Gaughan appears to have been charged under § 683.01(b), the description of his offense comes from § 683.01(a). Because Appellants challenge the arrest as an arrest under § 683.01(a), we will address the constitutional issues in the context of that statute.

[2]In their brief, Appellants direct their challenge to § 683.01(a), and not § 683.01(b). Appellants acknowledge that the district court must accept the Ohio Court of Appeal's narrowing construction of § 683.01(b) in *City of Cleveland v. Vento*, No. 79913, 2002-Ohio-2613, 2002 Ohio App. LEXIS 2476 (Ohio Ct. App. May 23, 2002).

06-3010
Gaughan v. City of Cleveland

## JURISDICTION & STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 (2000). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

This court reviews a dismissal for failure to state a claim *de novo*. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). We construe the complaint in a light most favorable to the plaintiff, and accept all of the plaintiff's factual allegations as true. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

At issue here are Appellants' void for vagueness and overbreadth challenges to the Cleveland Ordinances. We first address their arguments that the Ordinances are impermissibly vague; we then address their arguments that the Ordinances are overbroad.

## I.     Vagueness challenges

Vague laws are disfavored because they: (1) do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited;" (2) do not provide explicit standards for those who enforce the law, leading to arbitrary and discriminatory enforcement; and (3) may inhibit the exercise of basic First Amendment freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). An ordinance is void for vagueness "if its prohibitions are not clearly defined." *Id.* at 108. Specifically, a law is impermissibly vague if it "denies fair notice of the standard of conduct for which the citizen is to be held accountable," or gives law enforcement officials "an unrestricted

- 5 -

delegation of power which leaves the definition of its terms to [them]." *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608–09 (6th Cir. 2005).

### A. Section 683.01(a)

#### 1. Section 683.01(a) is not facially impermissibly vague.

In the district court, Appellants mainly focused on a claim of facial invalidity as to the first phrase of § 683.01(a), "[n]o person shall play any radio, music player, television, audio system or musical instrument in such a manner or at such volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants," arguing that § 683.01(a) was impermissibly vague because it contained the term "annoy." The district court rejected Appellants' challenge. Instead, it applied a reasonable person standard to § 683.01(a) and found that it was not impermissibly vague. We agree with the district court's conclusion.

To interpret a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue. *See Grayned*, 408 U.S. at 109–11 (looking first to state court's interpretation of the state statute); *Terminiello v. City of Chicago*, 337 U.S. 1, 6 (1949) ("We can only take the statute as the state courts read it."). If a state court has not addressed the ordinance at issue, federal courts will look to the "words of the ordinance itself, [] the interpretations the [state court] has given to analogous statutes, and, perhaps to some degree, . . . the interpretation of the statute given by those charged with enforcing it." *Grayned*, 408 U.S. at 110 (footnotes, citations, and internal quotation marks omitted).

Significantly, the court is to apply a narrowing construction to a state statute if the state courts in question have applied a narrowing construction to a similar statute. *See id.* at 111–12; *see also*

*Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 91 (1965) (providing that federal courts must defer to any narrowing construction given to state ordinances by the state court). In *Grayned*, the Supreme Court examined an anti-noise ordinance of Rockford, Illinois. 408 U.S. at 107. The Court noted that had it been "left with just the words of the ordinance," it would have been concerned about the phrase "tends to disturb." *Id.* at 111. The Court, however, found that it was not left with only the words of the ordinance because the Illinois Supreme Court had construed another statute with a similar phrase. *Id.* In the other instance, the Illinois Supreme Court held that a statute with the phrase "tending to disturb the peace . . . permitted conviction only where there was 'imminent threat of violence.'" *Id.* Because the Illinois state court imported the "imminent threat of violence" standard to a similar ordinance and had relied on those decisions in interpreting the Rockford ordinance, the Court held that it was proper to import an "imminent" standard to the Rockford ordinance. *Id.* at 111–12. Thus, we look to see whether the Ohio courts have examined § 683.01(a) or a similar ordinance.

Here, the Ohio Supreme Court has not examined § 683.01(a), but it has examined a similar ordinance in *State v. Dorso*, 446 N.E.2d 449 (Ohio 1983). In *Dorso*, the Ohio Supreme Court examined a Cincinnati ordinance regulating the playing of sound that "disturb[s] the peace and quiet of the neighborhood." *Id.* at 450. In interpreting the statute, the court first noted that it was "obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it." *Id.* It then adopted the approach taken in *State v. Chaplinsky*, 18 A.2d 754 (N.H. 1941), which applied a reasonable person standard to a New Hampshire ordinance to save it from a vagueness challenge. *Dorso*, 446 N.E.2d at 452. The *Dorso* court held that the Cincinnati ordinance prohibited

the playing of music and amplification of sound "in a manner which could be anticipated to offend the *reasonable person*, *i.e.*, the individual of common sensibilities." *Id.* (emphasis added). That is, the ordinance "proscribe[d] the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.*, conversation or sleep" and "does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive." *Id.* The Ohio court then held that this objective reasonable person standard gave fair notice of the conduct prohibited, and thus, the Cincinnati ordinance was not impermissibly vague. *Id.* at 453.

We will adopt the Ohio Supreme Court's narrowing construction in *Dorso* and apply a reasonable person standard to § 683.01(a) because of the similarities between § 683.01(a) and the Cincinnati ordinance.[3] First, the group protected by § 683.01(a), "neighboring inhabitants," and the entity protected by the Cincinnati ordinance in *Dorso*, "neighborhood," are similar. Webster's Dictionary defines "neighboring" as "that [which] is immediately adjacent or relatively near," *Webster's Third New Int'l Dictionary* 1514 (1981), and it defines "inhabitant" as "a person who dwells or resides permanently in a place as distinguished from a transient lodger or visitor" and as

---

[3]The Cincinnati ordinance provided:

> No person, association, firm or corporation, operating a restaurant, hotel, summer garden or other place of refreshment or entertainment, shall permit, nor shall any person in or about such restaurant, hotel, summer garden or other place of refreshment or entertainment engage in the playing or rendition of music of any kind, singing, loud talking, amplification of sound, or other noises on or about the premises, in such manner as to disturb the peace and quiet of the neighborhood, having due regard for the proximity of places of residence, hospitals or other residential institutions and to any other conditions affected by such noises.

*Dorso*, 446 N.E.2d at 449 n.1.

- 8 -

"one that makes its habitat or is commonly found in a place," *id.* at 1163. Meanwhile, *Dorso* defined "neighborhood" as "the quality or state of being immediately adjacent or relatively near," "a place or region near," and "the people living near one another."[4] 446 N.E.2d at 451. Thus, both ordinances appear to protect a similar group of people.

Second, the two ordinances address the same type of behavior. The phrase in § 683.01(a), "disturb the quiet, comfort or repose" is remarkably similar to the phrase "disturb the peace and quiet," in the Cincinnati ordinance. The extra word in § 683.01(a), "repose," is defined as "a state of resting after exertion or strain," *Webster's Third New Int'l Dictionary* at 1926, and has a similar meaning to the definition of the words "quiet" and "comfort." These phrases all conjure images of relief, rest, and relaxation. Thus, the addition of the word "repose" does not significantly differentiate § 683.01(a) from the Cincinnati ordinance. Finally, both ordinances regulate the use of sound devices. *Compare Dorso*, 446 N.E.2d at 450 (stating that the ordinance regulated the playing of music or amplifying of sound), *with* C.C.O. § 683.01(a) ("No person shall play any radio, music player, television, audio system or musical instrument in such a manner . . . ."). Given that the Ohio courts imported a reasonable person standard to a very similar sound ordinance, the Ohio courts would also likely import a reasonable person standard to § 683.01(a).

This conclusion is further supported by the Ohio appellate court's decision in *Vento*, 2002 Ohio App. LEXIS 2476. In *Vento*, the Ohio Court of Appeals examined C.C.O. § 683.01(b) and found that § 683.01(b) was similar to the sound ordinance discussed in *Dorso*. *Vento*, 2002 Ohio

---

[4]The Ohio court held that an ordinary person would understand this definition of neighborhood. *Dorso*, 446 N.E.2d at 451.

App. LEXIS 2476, at *9. The *Vento* court then applied a reasonable person standard to § 683.01(b) and held that it was not impermissibly vague on its face. *Id.* at *9–*10.

*Vento* further indicates that the Ohio courts would apply the reasonable person standard used in *Dorso* to construe § 683.01(a) narrowly because the ordinance examined in *Vento*, § 683.01(b), is also similar to § 683.01(a). First, the two subsections share a significant amount of identical language. Both subsections share parts of the phrase "no person shall play any radio, music player, television, or audio system" and parts of the phrase "in such a manner or at such a volume as to disturb the quiet, comfort or repose." *See* C.C.O. § 683.01(a) & (b). Second, both subsections also regulate the use of sound devices. *Id.* In light of these significant similarities, *Vento* further supports the conclusion that the Ohio courts would extend the reasonable person standard applied in § 683.01(b) to § 683.01(a).

In sum, both *Dorso* and *Vento* indicate that we should apply a reasonable person standard to § 683.01(a). Accordingly, we interpret § 683.01(a) as preventing the playing of sound on a sound device in such a manner or at such a volume as to annoy or disturb the quiet, comfort or repose of a reasonable neighboring inhabitant. Like the Cincinnati ordinance in *Dorso*, § 683.01(a) "does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive." *Dorso*, 446 N.E.2d at 452.

Notwithstanding the narrowing construction, Appellants maintain that § 683.01(a) is impermissibly vague because it contains the term "annoy." Appellants argue that the term "annoy" is inherently vague and allows for subjective enforcement. Appellants also argue that the district

06-3010
Gaughan v. City of Cleveland

court's interpretation of the term "annoy" deprives it of independent meaning within the ordinance.
We disagree with Appellants.

First, the use of the term "annoy" or "annoying" does not automatically make an ordinance impermissibly vague. Appellants' citation of *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), to support its position, is unavailing. In *Coates*, because the Ohio Supreme Court did not give a narrowing construction to a Cincinnati ordinance, the Supreme Court was "relegated . . . to the words of the ordinance itself." *Id.* at 614. The Court thus held that a Cincinnati ordinance containing the term "annoying" was impermissibly vague because the ordinance "did not indicate upon whose sensitivity a violation does depend – the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man."[5] *Id.* at 613. Unlike *Coates*, in this case, we are not left with the mere words of the ordinance, but are guided by a narrow construction of the statute. Here, a violation of § 683.01(a) depends upon the sensitivity of a reasonable person.

Second, an ordinance does not necessarily allow for subjective enforcement merely because it contains the term "annoy" or "annoyance." *Saia v. New York*, 334 U.S. 558 (1948), cited by Appellants in this regard, is inapposite. In *Saia*, the Supreme Court held that an ordinance was unconstitutional on its face because "it establishes a previous restraint on the right of free speech" by requiring a person to obtain a permit from the chief of police prior to using a loud speaker or

---

[5]The Court distinguished *Coates* from *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942), in which the New Hampshire Supreme Court gave a narrowing construction to a state statute. *Coates*, 402 U.S. at 613 n.3.

amplifier. *Id.* at 559–60. The discretion of the chief of police was unfettered. *Id.* at 560. The Court was not faced with a statute that had been narrowed by the state courts.

Finally, while the words of a statute may simply be used to clarify other words, the term "annoy" appears to have an independent and specific meaning in the context of the statute. Webster defines "annoy" as "to irritate with a nettling or exasperating effect esp[ecially] by being a continuous or repeatedly renewed source of vexation." *Webster's Third New Int'l Dictionary* at 87. Thus, annoyance may be more directly connected to a manner of utilizing sound devices other than loud volume.

In sum, the imposition of a reasonable person standard to § 683.01(a) creates an objective standard against which the ordinance can be enforced. Accordingly, § 683.01(a) provides fair notice of the prohibited conduct and is not impermissibly vague on its face.[6]

### 2. Section 683.01(a) is not vague-as-applied to Gaughan

Because § 683.01(a) is not vague on its face but provides fair notice of the conduct that is prohibited, Appellants received sufficient notice that their conduct was prohibited. Thus, we reject Appellants' vague-as-applied challenge.[7]

---

[6]Appellants also contest the district court's interpretation of the phrase "annoy or disturb the quiet, comfort or repose of neighboring inhabitants." The district court interpreted the phrase "annoy or disturb the quiet, comfort or repose of neighboring inhabitants" as "annoy . . . the quiet, comfort or repose of neighboring inhabitants." (J.A. 81–82.) Appellants disagree with the district court's interpretation, arguing that "'repose' is not annoyed, *people* are annoyed." (Appellants' Br. 44.) Even if so, Appellants' interpretation does not render the statute vague.

[7]Appellants briefly argue that the § 683.01(a) is impermissibly vague because the first clause of the ordinance, "[n]o person shall play any radio, music player, television, audio system or musical instrument in such a manner or at such volume as to annoy or disturb the quiet, comfort or repose

**B.** **Section 605.10(b)(9)**

In addition to their challenge to § 683.01(a), Appellants argue that § 605.10(b)(9) is

impermissibly vague on its face because the words "unseemly" and "unnecessary" are imprecise and

---

of neighboring inhabitants" does not specify the location of the prohibited activity while the second clause of the ordinance, "at a volume which is plainly audible to persons other than those who are in the room in which such device or instrument is played and who are voluntary listeners thereto," appears to refer to the indoor use of sound devices. Appellants argue that because the first clause of the ordinance does not specify a location, the indoor location specified in the second clause of the ordinance controls the scope of the ordinance. Thus, Appellants argue that the ordinance was applied improperly to Gaughan because the ordinance applies to the indoor, and not outdoor, use of sound devices.

Appellants did not raise this issue in the district court. "When a party fails to present an argument to the district court, we have discretion to resolve the issue only where the proper resolution is beyond any doubt, or where injustice might otherwise result." *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996) (citing *Brown v. Crowe*, 963 F.2d 895, 897–98 (6th Cir. 1992); *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 387 (6th Cir. 1989)). The Ohio courts have not decided whether § 683.01(a) is limited to regulating the indoor use of sound devices, and we cannot say that the statute clearly applies only to sound generated indoors. Further, because of the confusion as to whether Gaughan was charged under § 683.01(a) or (b), *see supra* note 1, it was important to raise this challenge in the trial level court. We do not find that injustice would result from declining to rule on the debatable point that neither side had the opportunity to address fully in district court.

Appellants, however, argue that we must resolve the issue because the district court dismissed their case for failure to state a claim, and that we can affirm the dismissal only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Appellants essentially argue that our standard of review for dismissals under Fed. R. Civ. P. 12(b)(6) circumvents the principle stated above. Appellants, however, point to no law supporting their position that an appellate court must consider all arguments, whether or not they were developed fully in the court below, simply because the district court below had dismissed the case for failure to state a claim. *See Borkins v. U.S. Postal Serv. Employees*, 97 F. App'x 32, 35 (6th Cir. 2004) (unpublished) (affirming a dismissal under Fed. R. Civ. P. 12(b)(6) and not considering an argument that was not raised in the court below).

do not present an objective criteria for the public to follow or for the police to enforce.[8]  Appellants

also fault § 605.10(b)(9) for not setting a "decibel measurement level, or a limited contextual

application." (Appellants' Br. 28 (quotation marks & footnotes omitted).)  The narrow interpretation

applied to § 683.01(a), however, also applies to § 605.10(b)(9).   Here, § 605.10(b)(9) refers

specifically to "[t]he making of any loud, unseemly or unnecessary noise in violation of Chapter 683

of these Codified Ordinances."  C.C.O. § 605.10(b)(9).  Because a reasonable person standard

applies to § 683.01(a) and (b), and because § 605.10(b)(9) refers specifically to noises made in

violation of § 683, the reasonable person standard and all the limitations of § 683 also apply to

§ 605.10(b)(9).

Our narrow construction of § 605.10(b)(9) distinguishes this case from the cases that

Appellants cite in arguing that ordinances containing terms such as "unnecessary" and "unseemly,"

or cases that lack a decibel measurement level are unconstitutionally vague.[9]  Unlike the ordinances

---

[8]Appellants mainly confine their arguments to the terms "unseemly" and "unnecessary," and not the term "loud." (Appellants' Br. 27–29.)  The term "loud" has survived a vagueness challenge in the Supreme Court.  *See Kovacs v. Cooper*, 336 U.S. 77, 79 (1949) (stating that the term "loud" has "through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden").

[9]The ordinances in the cases cited by Appellants were not narrowed by judicial interpretation. *See Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 489–90 (4th Cir. 1983) (analyzing "unnecessary noise" separately from "unreasonably loud noises" and holding that "unnecessary" is unconstitutionally vague); *U.S. Labor Party v. Pomerleau*, 557 F.2d 410, 412–13 (4th Cir. 1977) (holding that a sound ordinance establishing a maximum decibel level permitted in different zones in Baltimore was impermissibly vague because the method for measuring the decibel level depended upon the subjective opinion of the investigator); *Dupres v. City of Newport*, 978 F. Supp. 429, 433–34 (D.R.I. 1997) (finding that a sound ordinance containing the words "disturbing, or unnecessary noise" was unconstitutionally vague because the ordinance did not have any "qualifying language" that made it "possible for individuals to determine what conduct is prohibited

in the cases cited by Appellants, § 605.10(b)(9) is sufficiently limited by § 683 so that it provides

notice to citizens of the types of conduct that are prohibited and therefore, it is not unconstitutionally

vague on its face.[10]

## II. Overbreadth

As indicated, Appellants also challenge the Cleveland Ordinances as overbroad. Appellants

argue that both § 683.01(a) and § 605.10(b)(9) are facially overbroad. Appellants further argue that

§ 683.01(a) is overbroad as applied to Gaughan individually. We again reject Appellants'

arguments.

### A. The Cleveland Ordinances are not facially overbroad.

Appellants argue that § 683.01(a) and § 605.10(b)(9) are overbroad because they "broadly

prohibit all forms of speech, including Plaintiffs' religious and political speech, played through a

---

. . . . Under the Newport ordinance, the legality of a person's conduct is judged solely by the subjective characteristics assigned to it by anyone exposed to it") (citation omitted); *Dae Woo Kim v. City of New York*, 774 F. Supp. 164, 170 (S.D.N.Y. 1991) (finding that a sound ordinance prohibiting "unnecessary noise" was impermissibly vague because it did not provide objective standard for enforcement); *Fratiello v. Mancuso*, 653 F. Supp. 775, 790 (D.R.I. 1987) (holding that a sound ordinance prohibiting "unnecessary noises or sounds" was unconstitutionally vague because it did not provide an objective criteria for its enforcement by public officials); *Pritikin v. Thurman*, 311 F. Supp. 1400, 1402–03 (S.D. Fla. 1970) (holding that without a narrowing construction, a sound ordinance that prohibits language or conduct that disturbs or is calculated to disturb the peace was impermissibly vague).

[10]Although the Ohio Supreme Court and the Ohio Court of Appeals have not examined § 605.10(b)(9), a municipal court has examined § 605.10 and held that, as a whole, the ordinance was not unconstitutionally vague on its face. *See City of Cleveland v. Powell*, 584 N.E.2d 1386, 1389 (Cleveland Mun. Ct. 1991). The Ohio court found that "[t]he general language [of the ordinance] is more than sufficiently modified by the nine sections of examples which describe the types of noise which the law seeks to forbid." *Id.*

sound device if is it subjectively deemed 'annoying' or 'unnecessary' by someone else."[11] (Appellants' Br. 49–50.)

A regulation is overbroad if it "'reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Odle v. Decatur County*, 421 F.3d 386, 393 (6th Cir. 2005) (quoting *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson County*, 274 F.3d 377, 387 (6th Cir. 2001)). Cases that run afoul of the overbreadth doctrine uniformly involve regulations that infringe the exercise of protected activities that do not constitute the hazard or evil which the regulation is designed to prevent. For instance, restrictions on public gatherings of any size are overbroad because small gatherings do not affect the public interest in "crowd and traffic control, property maintenance, and protection of the public welfare." *Am.-Arab Anti-Discrimination Comm.*, 418 F.3d at 608.

Thus, although the government may place a reasonable time, place, and manner regulation upon protected speech[12] in public fora, the regulation must: (1) be content neutral; (2) be narrowly tailored to serve a significant governmental interest; and (3) leave open alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). We examine each requirement in turn.

### 1. The Cleveland Ordinances are content neutral.

[11]Appellants' overbreadth claim is based in part on the assertion that the ordinances in question were not subjected to a limiting construction for "reasonableness" by Ohio state courts. As discussed previously, the district court correctly found that the regulations are subject to such a limiting construction.

[12]The parties do not contest that the content of Appellants' speech is protected.

Appellants contend that the Cleveland Ordinances impose a "subjective" standard, allowing "any . . . person who disagrees with or is offended by the 911 audio recording [to] exercise the 'heckler's veto' option granted them by the City to effectively squelch Plaintiffs' speech."[13] (Appellants' Br. 50.) We disagree.

Facially, the Cleveland Ordinances are content neutral. As previously discussed, § 683.01(a), which § 605.10(b)(9) incorporates,[14] prohibits the playing of sound in such a manner or at such a volume as to annoy or disturb reasonable neighboring inhabitants. As such, the Cleveland Ordinances clearly regulate the manner and volume of the sound projected, but do not regulate the content of the message that is projected. Thus, while the Cleveland Ordinances regulate *how* sound is projected, they do not contain any language regulating *what* is projected. *See Vento*, 2002 Ohio App. LEXIS 2476, at *13 (finding that a similar section, § 683.01(b), is content neutral because it restricts only the manner and volume of speech). The fact that the regulation applies broadly to all types of speech does not alter this aspect of the overbreadth analysis. *See Hill v. Colorado*, 530 U.S. 703, 731 (2000) ("[T]he comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive.").

Because the Cleveland Ordinances prohibit the playing of sound in such a manner or at such a volume as to annoy or disturb the reasonable person, they do not grant the hypersensitive person

---

[13]A "heckler's veto" is defined as "an attempt by those who dislike a speaker to create such a disturbance that the speaker must be silenced." *Ams. United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1553 (6th Cir. 1992).

[14]Because § 605.10(b)(9) refers to § 683 and because Appellants do not specifically use the language of § 605.10(b)(9) in its overbreadth arguments, we address the language of § 683.01(a).

or person who strongly believes in abortion rights a "heckler's veto" over Appellants' right to free speech. Accordingly, the Cleveland Ordinances are content neutral and pass the first prong of the overbreadth test.

**2.      The Cleveland Ordinances are narrowly tailored to serve a significant public interest.**

The Supreme Court has held that "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Hill*, 530 U.S. at 726 n.32 (quoting *Ward*, 491 U.S. at 798). The narrow-tailoring requirement is met if the regulation "'promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The regulation, however, cannot burden substantially more speech than necessary to further the government's interest. *Id.*

The Cleveland Ordinances were narrowly tailored to serve a significant public interest. First, Cleveland enacted its sound ordinances to protect its citizens from unwelcome noise, and the Supreme Court has held that this is a legitimate public interest. *See id.* at 796. Second, the Cleveland Ordinances are directed toward sound that is played from a device only in a manner that would annoy or disturb a reasonable person. They do not ban the use of all sound devices, they do not ban the projection of sound at all volumes, and they do not regulate the projection of sound in any other manner other than through the use of sound devices. Finally, absent the Ordinances, the government would be less effective in protecting its citizens from unreasonably annoying or

disturbing projections of sound from sound devices. Thus, the Cleveland Ordinances are narrowly tailored to serve a significant government interest.

### 3. There are alternative channels for communication.

The Supreme Court has held that "'people who wish to propagandize protests or views'" do not have a constitutional right to do so "'whenever and however and wherever they please.'" *United States v. Grace*, 461 U.S. 171, 177–78 (1983) (quoting *Adderley v. Florida*, 385 U.S. 39, 47–48 (1966)). The government may impose regulations upon protected speech as long as it leaves open alternative channels of communication. *Ward*, 491 U.S. at 791.

The Cleveland Ordinances do not ban all methods of communication. They only regulate, and do not ban, the projection of sound from sound devices. Additionally, Appellants have not argued that they are shut off from other channels of communication, and there is no indication that Appellants cannot convey the content of their audio recording in another manner. Thus, the Cleveland Ordinances leave open alternative channels of communication.

In sum, the Cleveland Ordinances survive all three hurdles of the overbreadth test, and they are not facially overbroad.

### B. Section 683.01(a) is not overbroad as applied.

"An ordinance which is not overbroad on its face may nevertheless be unconstitutional as applied if it is enforced against a protected activity." *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Here, Gaughan (individually) argues that § 683.01(a) was overbroad as applied to him. Gaughan bases his challenge on his two arrests for violations of § 683.01(a). We hold that § 683.01(a) is not overbroad as applied to Gaughan.

Gaughan claims that he was arrested on the first occasion because an employee of the clinic, who disliked the content of the recording, had complained about his conduct. Appellants stated that an employee of the clinic had sworn a complaint under oath that Gaughan violated § 683.01(a) and that afterwards, a warrant was issued for his arrest. (Am. Compl. ¶ 17.) Although Gaughan alleges that the employee was motivated by her displeasure with the content of the audio recording, he did not allege that the employee told the police that she disliked the content of the audio recording or that the police acted because of the employee's displeasure with the content of the recording. Rather, based on Gaughan's own complaint, it appears that he was arrested because of a complaint sworn under oath that he violated the terms of § 683.01(a). (Id.) Accordingly, § 683.01(a) was not overbroadly applied to Gaughan during his first arrest.

We also see no issues with Gaughan's second arrest. Gaughan was arrested a second time after the Cleveland police received two complaints about his playing of the audio recording. Gaughan states that neighboring residents had complained about his playing of the audio recording while standing on a public sidewalk across the street from the rear of the clinic. (Am. Compl. ¶ 24.) After police informed Gaughan about the complaint, Gaughan moved to the front of the clinic and continued playing the recording at the same volume. Officers then informed Gaughan that they had received another complaint from an employee of the clinic and arrested him for violating § 683.01(a). (Am. Compl. ¶ 25.) Although Gaughan alleges that the police arrested him based upon the second complaint by the employee of the clinic, he did not allege specifically that the police arrested him based upon the clinic employee's objection to the *content* of his speech. (Am. Compl. ¶ 27.) Rather, Gaughan's own amended complaint indicates that after receiving two complaints from

neighboring inhabitants, the police arrested him for "play[ing] an audio system in such a manner or at such a volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants." (Am. Compl. ¶ 27.)  As with the first arrest, there is no indication that the police acted because of the content of the speech.  Accordingly, § 683.01(a) was not unconstitutionally applied to Gaughan.

## CONCLUSION

For the foregoing reasons, we reject Appellants' constitutional challenges to C.C.O. §§ 683.01(a) and 605.10(b)(9).  Accordingly, we AFFIRM the decision of the district court.